**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**JOHN CONN AND PATRICIA CONN**                                    **PLAINTIFFS**

**V.**                                          **CAUSE NO. 3:10-CV-00300-CWR-LRA**

**UNITED STATES OF AMERICA, ET AL.**                          **DEFENDANTS**

**ORDER DENYING MOTION TO STRIKE ANSWER**

After an atypical schedule of starts, stops, stalls, and wrong turns, the above-styled cause
is before the Court on the Plaintiffs' Motion to Strike Answer [Docket No. 18]. Having reviewed
the parties' briefs relevant thereto, all evidence submitted therewith, the parties' arguments at a
hearing on April 21, 2011, and all available authority controlling the question at hand, the Court
has concluded that the motion should be denied.

On May 21, 2010, John and Patricia Conn (hereinafter collectively "Conn") filed a
medical malpractice suit [Docket No. 1] against the United States of America.[1] Conn served
process on the United States attorney and the Veterans Administration that same day [Docket
No. 3]. However, Conn did not immediately serve the Attorney General – a procedural omission
that set into motion a series of events that ultimately has culminated in the dispute at hand.

Sixty days came and went, and without having heard a word of response from the United
States, Conn moved for an entry of default on July 23, 2010 [Docket No. 6]. The clerk entered
the same on July 26, 2010 [Docket No. 7], and Conn immediately moved for a default judgment

---

[1] The Complaint originally named the Defendant as "United States of America, Veterans
Administration d/b/a G.V. (Sonny) Montgomery VA Medical Center." In the fullness of time,
the Plaintiffs ultimately agreed that the Complaint simply should have named the United States
of America as the Defendant. *See* Agreed Order [Docket No. 13]. However, this
mischaracterization is not an issue relevant to the question now before the Court.

[Docket No. 8]. On July 29, 2010, with still no response forthcoming from the United States, the Court entered a default judgment in Conn's favor [Docket No. 9].

The next day, undoubtedly awakened by this undefended turn of events, the United States stirred and filed a Motion to Set Aside Default Judgment and Clerk's Entry of Default [Docket No. 10]. Specifically, the United States argued that because Conn had not sent a copy of the complaint and summons to the Attorney General, as is required by Rule 4(i)(1)(B) of the Federal Rules of Civil Procedure, service of process had never been perfected and, therefore, that the default judgment was void as a matter of law. Defendant's Memorandum in Support [Docket No. 11] at 2.

Conn did not respond to the United States' motion, and for a time, neither did the district court. But the record demonstrates that the parties did not lie altogether dormant. According to an apparent series of e-mails between the two parties' attorneys, Conn and the United States collaborated on an agreed order during August 2010 to set aside the default judgment on the condition that the United States answer Conn's Complaint on or before October 1, 2010.[2] *See* Exhibit A to Motion to Strike Answer [Docket No. 18-1].

That agreed order, according to the e-mails, met with both parties' approvals, and the United States avers that it e-mailed the document to the district judge's chambers on August 11, 2010. *See* Exhibit 1 to Defendant's Response [Docket No. 19-1].

Notwithstanding the agreement, October 1 came and went without the United States' response to the suit. Not until October 8, 2010, did the United States file its Answer [Docket No.

---

[2] In pertinent part, the Agreed Order read, "The Defendant agrees to file an answer on or before October 1, 2010." Agreed Order [Docket No. 13] at 1.

2

12], but that was not to be the case's only filing of unexpected timing. On October 21, 2010, the district court entered the Agreed Order [Docket No. 13] in which, many weeks earlier, the parties had agreed to set October 1 as the United States' deadline to answer.[3]

Conn moved the Court to strike that Answer on December 9, 2010 [Docket No. 18]. According to Conn, Rule 6(b) of the Federal Rules of Civil Procedure forbade the United States to file its Answer out of time without the Court's permission, for which the United States never asked. In response, the United States argues that Conn's failure to serve the Attorney General pursuant to Rule 4(i)(1)(B) of the Federal Rules of Civil Procedure divested the district court of jurisdiction at the time of the default judgment. Def. Resp. at 1. The United States claims that Conn waited until August 10, 2010, to serve the Attorney General. *See* Exhibit 3 to Def. Resp. [Docket No. 19-3]. Therefore, in the view of the United States, its 60-day window in which to answer began running on August 10 and ended on October 8 – the date on which it filed its Answer.

Although the set of facts presented – a delayed but ultimately successful service on the Attorney General, many weeks after service on the United States – is uncommon, the legal question presented carries a tone that demands the Court's caution because "even a properly made motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." *Int'l Longshoremen's Assoc., S.S. Clerks Local 1624, AFL-CIO v. Virginia Int'l Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va. 1995). But "[i]f the court determines the defenses to be insufficient as a matter of law, immaterial, or impertinent the granting of a motion

---

[3] Given the Order's establishment of a deadline long since past, the presumption must be indulged that the district court issued its command with *nunc pro tunc* effect. *See, e.g.*, *Fowler v. Equitable Trust Co.*, 141 U.S. 384, 393-94 (1891).

to strike is appropriate." *F.D.I.C. v. Butcher*, 660 F. Supp. 1274, 1277 (E.D. Tenn. 1987) (granting motion to strike). *See also Directv, Inc. v. Young*, 195 Fed. Appx. 212, 215 (5th Cir. 2006) (affirming a district court's decision to strike an untimely answer under Rule 12); *De Vargas v. Brownell*, 251 F.2d 869, 871 (5th Cir. 1958); *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976) ("[M]otions to strike . . . are granted only where clearly warranted.") (granting motion to strike).

"When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . ." Fed. R. Civ. P. 6(b)(1). However, in this case, the United States clearly never asked for any extension of time beyond October 1, 2010, in which to answer Conn's Complaint, although its Answer did not emerge until October 8, 2010. Therefore, in order for that filing to have been timely, the United States must be correct in its argument that its 60-day responsive period did not begin until Conn sent copies of his complaint and summons to the Attorney General in August 2010.

When a plaintiff sues the United States, service of process must comply with Rule 4(i) of the Federal Rules of Civil Procedure, which states in relevant part:

> (i) Serving the United States and Its Agencies, Corporations, Officers, or Employees.
>     (1) United States
>     To serve the United States, a part must:
>         (A)
>             (i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought – or to an assistant United States attorney or clerical employee whom the United States attorney designated in a writing filed with the court clerk – or
>             (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>         (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.[ ]

Service upon the United States is not complete until the plaintiff complies with the requirements relevant to both the United States attorney and the Attorney General. *Flory v. United States*, 79 F.3d 24, 26 (5th Cir. 1996); *Peters v. United States*, 9 F.3d 344, 345 (5th Cir. 1993). Moreover, it is fundamental to the American system of civil procedure that "the duty to answer only arises after service has been perfected." *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 123 n.6 (5th Cir. 2008). Therefore, logic alone would lead to the conclusion that the United States' responsive period cannot begin until both the United States attorney and the Attorney General have received copies of the summons and complaint.

But "[t]he life of the law has not been logic," O.W. Holmes, *The Common Law* 1 (1881), and as the case at bar demonstrates, neither is it always the lifeblood of the Federal Rules of Civil Procedure. Although service upon the Attorney General logically seems a prerequisite to the United States' duty to answer, Rule 12(a)(2) unmistakably requires the United States to "serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service *on the United States attorney*." The rule makes no mention at all of the plaintiff's duty to serve the Attorney General.

That is not to say, of course, that a plaintiff's failure to serve the Attorney General will go without consequence. Typically, the omission comes before a court when the plaintiff forgets to serve the Attorney General altogether and thereby fails to perfect service of process within 120 days of the filing of the complaint. *See* Fed. R. Civ. P. 4(m). In such instances, the typical penalty is dismissal of the action without prejudice. *See, e.g.*, *Flory*, 79 F.3d at 25; *George v. U.S. Dept. of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986). But Conn's tardiness in serving the Attorney General does not rise to such a level. According to the United States, the Attorney

General received copies of Conn's Complaint and summons on August 10, 2010. Exhibit 3 to Response to Motion to Strike [Docket No. 19-3]. This demonstrates that Conn completed service of process on the United States well within 120 days of initiating his suit on May 21, 2010.

But service on the Attorney General is relevant only to the question of whether Rule 4(m) stands violated; the duty in no way affects the timetable facing the United States, which must "serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney." Fed. R. Civ. P. 12(a)(2).

A review of authority demonstrates that this incongruity's appearances in the nation's courts are rare. One of the earliest and most insightful meditations on the matter emerged in 1956, when the Second Circuit called attention to the fact that Rule 4 uses different words to describe the prescribed manners of service on the United States attorney and the Attorney General. Specifically, Rule 4(a)(1)(A)(i) requires that a plaintiff seeking to serve the United States *deliver* a copy of the summons and complaint to the United States attorney; in contrast, Rule 4(a)(1)(B) demands merely that a plaintiff *send* copies of the documents by registered or certified mail to the Attorney General. Regarding the linguistic distinction, the learned Judge Medina opined:

> Since the delivery and the mailing required by [Rule 4] will normally be accomplished on different days, the selection of the date of delivery as the date fixing the time to answer imported not that mailing also was not mandatory but only that of the two dates, which normally would be separated only by a day or two, the date of delivery was considered a more appropriate measuring post – perhaps because the bilateral transaction involved in a delivery was a more reliable than a wholly unilateral act such as mailing.

*Messenger v. United States*, 231 F.2d 328, 330 (2nd Cir. 1956) (superseded on other grounds by Rule as stated in *Frasca v. United States*, 921 F.2d 450, 452 (2nd Cir. 1990)).

The *Messenger* Court's reasoning continued to carry the day nearly a half-century later in the Northern District of Illinois, when a district judge agreed with a plaintiff that the United States' 60-day responsive period began running at the time of service upon the United States attorney, notwithstanding a delay in service on the Attorney General.

> Although [Rule 4] does require Plaintiff to give notice to the U.S. Attorney General, pursuant to [Rule 12], Defendants' time to respond was not dependent upon notice to the Attorney General, but depended on the Plaintiff obtaining service on the U.S. Attorney. Therefore, . . . Defendants were in default after Plaintiff's [delayed] notice to the U.S. Attorney General.

*Macri v. Yamauchi*, 2002 WL 390223, *2 (N.D. Ill. 2002).

Likewise, this Court is compelled to hold that, so long as a violation of Rule 4(m) does not result therefrom, a delay in service on the United States attorney and the Attorney General does not alter the deadline for the filing of the United States' answer, which is due within 60 days after delivery of a copy of the summons and of the complaint to the United States attorney.

In the case at bar, the summons returned executed against U.S. Attorney Don Burkhalter on May 21, 2010. The United States' Answer, therefore, was due no later than July 20, 2010. Thereafter, by virtue of the parties' agreement, the district court extended the United States' deadline to October 1, 2010, but the Answer still did not emerge until October 8, 2010. That filing was untimely.

The peculiarity of this holding is not lost on the Court. The core purpose of service of process is "to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States*, 517 U.S. 654, 672 (1996). It might seem incongruent, at the very least, that the Rules of Civil Procedure could require the United States to answer even

before service thereon has been perfected. However, because the United States attorney has the responsibility to represent the United States and its government agencies and officials, service upon her provides the government a fair opportunity to answer and provide any defenses – even the claim of insufficiency of service of process for having failed to serve the Attorney General. This notwithstanding, under circumstances like those comprising the case at bar, Rule 12(a)(2) plainly requires just that.[4]

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Notwithstanding the clear untimeliness of the United States' answer, this Court is compelled to decline to exercise its authority under Rule 12(f) for two reasons.

First, when a party argues for the striking of a pleading, Rule 12(f)(2) requires that the motion be filed "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Because the Rules provide for no response to an answer, Conn should have moved to strike the United States' Answer on or before October 29, 2010. Instead, Conn delayed until December 9, 2010.

Second, motions to strike pleadings generally should not be granted absent a showing of prejudice to the moving party. *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962); *Mullins v. Chevron Oil Co.*, 344 F. Supp. 1063, 1067 (E.D. La. 1972). Conn has not argued convincingly that the United States' delay has resulted in prejudice to his ability to try his case. Conn contends that the United States has cost him more than nine

---

[4] "Failure to read a rule is the antithesis of good cause. Ignorance may be an explanation but it is not an excuse." *Tuke v. United States*, 76 F.3d 155, 156 (7th Cir. 1996) (Easterbrook, J.).

months, but in truth, the delay only cost him a week's time – that is, the lapse between October 1, 2010, when the parties agreed that the United States would answer, and October 8, when it actually did. And more than six months of that period of time – namely, from the moment on which Conn filed his Motion to Strike on December 9, 2010, until the present day – has been spent solely addressing the question of whether the United States should be permitted to answer.[5] More importantly, no suggestion has been made by either party that the delay has resulted in lost evidence that would deprive the Court of an opportunity to hold a meaningful trial.

This lack of prejudice does not absolve the United States of its clear failure to comport with the dictates of Rule 12(a)(2), but it does compel the Court to bring this case back onto a more commonly trodden path with the hope that both parties will refocus their energies toward abiding by the Rules of Civil Procedure and ushering this case forward.

Toward that end, the Plaintiffs' Motion to Strike Answer [Docket No. 18] is denied.

SO ORDERED this Twenty-Seventh day of May 2011.


   /s/ Carlton W. Reeves
Hon. Carlton W. Reeves
United States District Court Judge

---

[5] The Court does not make this point with the intention of belittling the importance of the issue at hand but rather to illustrate the fact that not every hour that has passed since October 8 can be attributed to the United States' dilatoriness.

9